Matthew J. Preusch (298144)
KELLER ROHRBACK L.L.P.
801 Garden Street, Suite 301
Santa Barbara, CA 93101
(805) 456-1496, Fax (805) 456-1497
mpreusch@kellerrohrback.com

Lynn Lincoln Sarko, *pro hac vice forthcoming*
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
(206) 623-1900, Fax (206) 623-3384
lsarko@kellerrohrback.com

*Attorneys for Plaintiffs*
*Additional Attorneys Listed on Signature Page*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| ANDREW CROW, JENNIFER SAAVEDRA, LAUREN HOFFMAN TAYLOR, STEPHANIE PATRICK, JOHN KENNEDY BAILEY, KEVIN O'BRIEN, SARAH O'BRIEN, LORRAINE PLANTE, and STEPHEN PLANTE, individually and on behalf of all others similarly situated, | No. |
| | **CLASS ACTION COMPLAINT** |
| Plaintiffs, | JURY DEMANDED |
| v. | Judge: |
| EQUIFAX, INC., | |
| Defendant. | |

# Table of Contents

I.  INTRODUCTION ................................................................................................. 1

II.  PARTIES ............................................................................................................. 2

    A.  Plaintiffs ................................................................................................. 2

    B.  Defendant ............................................................................................... 2

III.  JURISDICTION AND VENUE ........................................................................... 3

IV.  INTRADISTRICT ASSIGNMENT ..................................................................... 3

V.  FACTUAL ALLEGATIONS ............................................................................... 3

    A.  Equifax Was Negligent in Its Efforts to Protect Highly Valuable Personal
        Information ............................................................................................. 3

    B.  Equifax Failed to Release News of the Massive Breach Within a Timely
        Manner, and Its Response Has Been Deeply Flawed ............................. 5

    C.  Equifax's Failures Have Harmed and Will Continue to Harm Breach
        Victims ................................................................................................... 7

VI.  CLASS ACTION ALLEGATIONS ...................................................................... 9

    A.  Class Definition(s) ................................................................................. 9

        1.  National Class ............................................................................. 9

        2.  Statewide Classes ...................................................................... 10

VII.  CLAIMS FOR RELIEF ..................................................................................... 12

    COUNT I — Willful Violation of The Fair Credit Reporting Act, 15 U.S.C.
        § 1681, et seq. ....................................................................................... 12

        1.  Overview .................................................................................... 12

        2.  Violations of 15 U.S.C. §1681e(a) – Willful Failure to Maintain
            Reasonable Security Measures .................................................... 13

        3.  Violations of 15 U.S.C. §1681b(a) – Furnishing Consumer Data
            Without a Permissible Purpose .................................................... 14

        4.  Violations of 15 U.S.C. §1681b(g) – Willful Disclosure of
            Confidential Medical Data .......................................................... 15

        5.  Violations of 15 U.S.C. §1681c-1 – Willful Failure to Respond to
            Suspected Identify Theft ............................................................. 15

6. Plaintiffs and the Nationwide Class Suffered Damages as a Proximate Result of Equifax's Willful Violations of FCRA and are Entitled to Relief ........................................................................ 16

COUNT II — Negligent Violation of the Fair Credit Reporting Act ........................................... 18

COUNT III — Negligence ...................................................................................................... 20

COUNT IV — Negligence Per Se ............................................................................................ 22

COUNT V — Declaratory Judgment ....................................................................................... 26

COUNT VI — Violation of the California Customer Records Act California Civil Code Section 1798.80 et seq. ................................................................................................. 27

COUNT VII — Violation of The Unfair Competition Law California Business and Professions Code Section 17200 et seq. ........................................................................... 30

COUNT VIII — Violation of the Georgia Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-370, et seq. ....................................................................................... 33

COUNT IX — Violations of West Virginia Consumer Credit and Protection Act, W. Va. Code § 46A-1-101, et seq. .................................................................................... 36

COUNT X — Violations of New York's Consumer Protection from Deceptive Acts and Practices Law,  N.Y. Gen. Bus. Law § 349 ......................................................... 38

COUNT XI — Violations of Rhode Island Deceptive Trade Practice Act, R.I. Gen. Laws Ann. § 6-13.1-1, et seq. ..................................................................................... 41

VIII.   PRAYER FOR RELIEF .................................................................................................. 45

IX.   DEMAND FOR JURY TRIAL .......................................................................................... 45

Plaintiffs bring this action on behalf of themselves and all others similarly situated, against Equifax, Inc. ("Defendant").  Plaintiffs allege the following based upon information and belief, the investigation of counsel, and personal knowledge as to the factual allegations pertaining to himself/herself.

## I.      INTRODUCTION

1.      Equifax, one of the nation's three large credit reporting agencies, trades in the personal information of tens of millions of Americans. Those who trust that information to Equifax have a right to expect that it uses the best possible information security infrastructure and practices. Unfortunately for nearly half of the nation's population, that appears not to have been the case.

2.      On September 7th, Equifax disclosed that it had experienced a data breach that has exposed the most sensitive identifying information of 143 million Americans (the "Data Breach"). That includes names, dates of birth, and Social Security numbers: the essential raw materials for identity thieves. The breach also exposed phone numbers, credit card numbers, and driver's license numbers.

3.      The Data Breach appears to have occurred in May, and does not appear to have been technically sophisticated. Rather, hackers were able gain access through a common web application with a known vulnerability that reportedly was not properly secured.

4.      Once the hackers had access, they had more than two months to search for and obtain the most valuable information for identity thieves before Equifax discovered the breach. Although Equifax knew about the breach by July 29, it did not tell the tens of millions of victims of that breach until September 7th. And Equifax's response since then has been, to put it charitably, bumbling.

5.      As a result of Equifax's negligence, tens of millions of Americans are now at increased risk of financial account fraud, tax fraud, and other forms identity theft. That increased risk will last for years, because the non-changeable identifying information has absolutely no shelf life.

6.      To redress that and other harms caused by what is already being called the worst consumer data breach in history, Plaintiffs brings this action on behalf of themselves and a proposed nationwide class of similarly situated victims, seeking all available remedies.

## II.   PARTIES

**A.   Plaintiffs**

1.   Class representative Andrew Crow is a U.S. Citizen and resident of Alameda County, California. Mr. Crow's data was compromised, damaged, and otherwise put at risk by Equifax's gross negligence and other violations of law.

2.   Class representative Jennifer Saavedra is a U.S. Citizen and resident of Los Angeles County, California. Ms. Saavedra's data was compromised, damaged, and otherwise put at risk by Equifax's gross negligence and other violations of law.

3.   Class representatives Lauren Hoffman Taylor and Stephanie Patrick are U.S. Citizens and residents of Fulton County and Troup County, Georgia, respectively. Both representatives' data was compromised, damaged, and otherwise put at risk by Equifax's gross negligence and other violations of law.

4.   Class representative John Kennedy Bailey is a U.S. Citizen and a resident of Kanawha County, West Virginia. Mr. Bailey's data was compromised, damaged, and otherwise put at risk by Equifax's gross negligence and other violations of law.

5.   Class representatives Kevin O'Brien and Sarah O'Brien are U.S. Citizens and residents of Albany County, New York. Mr. and Ms. O'Brien's data was compromised, damaged, and otherwise put at risk by Equifax's gross negligence and other violations of law.

6.   Class representatives Lorraine Plante and Stephen Plante are U.S. Citizens and residents of Kent County, Rhode Island. Mr. and Ms. Plante's data was compromised, damaged, and otherwise put at risk by Equifax's gross negligence and other violations of law.

**B.   Defendant**

7.   Equifax Inc. is a global company headquartered in Atlanta, Georgia that does business throughout the country, including California, has offices throughout the State including in San Rafael, Concord, and Palo Alto, and is one of the three primary credit reporting agencies in the United States. Equifax maintains data on more than 820 million consumers worldwide.  The company employs approximately 9,900 people and operates or has investments in 24 countries in North America, Central and South America, Europe and the Asia Pacific region. Among Equifax's subsidiaries is Equifax

Information Services, LLC, which collects and report consumer information to financial institutions

### III.   JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 based on the federal statutory claims below, and the Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

9.     This Court also has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship from one defendant, there are 100 or more Class members nationwide, and the aggregate amount in controversy exceeds $5,000,000.

10.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(3) because the Court has personal jurisdiction over Defendant, a substantial portion of the alleged wrongdoing occurred in this District and California, and Defendant has sufficient contacts with this District and California.

11.    Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims at issue in this Complaint, with over 15 million Californians impacted, arose in this District.

### IV.   INTRADISTRICT ASSIGNMENT

12.    This action is properly assigned to the San Francisco or Oakland Division of this District pursuant to N.D. Cal. L.R. 3-2, because a substantial part of the events or omissions giving rise to Plaintiffs' claims arose in the counties served by the San Francisco and Oakland Divisions.  Several of the named Plaintiffs and proposed Nationwide Class representative(s), as well as thousands of other Class members, who have had their personally identifying information breached, reside in the counties served by this Division.

### V.   FACTUAL ALLEGATIONS

**A.   Equifax Was Negligent in Its Efforts to Protect Highly Valuable Personal Information**

13.    Equifax is one of the largest credit reporting agencies in the world. It profits by reporting on people's most sensitive financial information. Hackers gained access to that information not as a result of a complex attack; rather, they exploited a known flaw in a common open-source web development software.

14.     The hackers, according to the company, "exploited a U.S. website application vulnerability to gain access to certain files." This vulnerability is a part of a software package for building web applications called Apache Struts. Apache reported the bug in March. But Equifax reportedly failed to patch it with a security update, even though hackers were already taking advantage of that vulnerability elsewhere at that time. For months, then, Equifax left open a known vulnerability that hackers could easily exploit to access the private data of almost half of all Americans.

15.     Equifax's failure to patch a known vulnerability is contrary to its public representations about its data security.  For example, in a 2011 report, "Leading With Integrity: The Equifax Business Ethics and Compliance Program," Equifax explained that the Gramm-Leach-Bliley Act required financial institutions to "develop and maintain an information security program to protect the security, confidentiality and integrity of the information." The report also represented that "Equifax entities that receive and collect consumer and customer information have developed and maintain appropriate information security programs."

16.     Nonetheless, it appears Equifax did not have sufficient infrastructure or procedures to prevent the intrusion. It also appears that Equifax did not have sufficient infrastructure or procedures to detect the intrusion once it occurred. Once the hackers were able to gain access, they appear to have had that access for over *two months*, which suggests Equifax had very poor security detection practices.

17.     Equifax's international data security practices suggest the company had a poor information security corporate culture. A group of security researchers in Argentina recently discovered that Equifax's employee portal to manage credit disputes from customers in that country "was wide open, protected by perhaps the most easy-to-guess password combination ever: 'admin/admin.'" Inside that portal, researchers could reportedly easily discover employee login and password information. Most troubling, the researchers could easily find customers' DNI, the Argentinian equivalent of a Social Security number. "To me, this is just negligence," one of the researchers told Brian Krebs. "In this case, their approach to security was just abysmal, and it's hard to believe the rest of their operations are much better."

18.     Rather than spend adequate resources on data security, Equifax reportedly spent hundreds of thousands of dollars seeking to "reform" laws that impose liability on credit reporting agencies or

require strict reporting of data breaches.  In the months preceding the Data Breach, Equifax Inc. was lobbying lawmakers and federal agencies to ease up on regulation of credit-reporting companies. According to its congressional lobbying-disclosure reports, Equifax spent at least $500,000 on lobbying Congress and federal regulators in the first half of 2017.

**B.    Equifax Failed to Release News of the Massive Breach Within a Timely Manner, and Its Response Has Been Deeply Flawed**

19.     Equifax reportedly discovered the Data Breach in July, but did not disclose the breach to the American public until September 7th. For weeks, consumers were unaware that some of their most valuable private information could be open, seen, and used by anybody. This personal information could include data about loans, loan payments and credit cards, as well as information on everything from child support payments, credit limits, missed rent and utilities payments, addresses and employer history, which all factor into credit scores.

20.     The impact of Equifax's delayed disclosure has been compounded by a botched response rollout, causing affected individuals additional harm and frustration. As computer security expert Brian Krebs wrote, "I cannot recall a previous data breach in which the breached company's public outreach and response has been so haphazard and ill-conceived as the one coming right now from big-three credit bureau Equifax."

21.     To begin with, the website that Equifax created to belatedly notify people of the Data Breach, www.equifaxsecurity2017.com, wrote Krebs, is "completely broken at best, and little more than a stalling tactic or sham at worst." For example, the website operates on a stock installation WordPress, which does not provide adequate security for website on which Equifax asks data breach victims to provide their last names and most of the Social Security number. As another indication of Equifax's slipshod approach, as reported by Ars Technica, Equifax left a username for administering the site in a page hosted on that site, "something that should never have happened":

[{"id":1,"name":"edelman","url":"","description":"","link":"https:\/\/www.equifaxsecurity2017.com\/author\/edelman\/","slug":"edelman","avatar_urls":{"24":"https:\/\/secure.gravatar.com\/avatar\/6f663bcf3fe53adc928a8eae7c7b66bc?s=24&d=mm&r=g","48":"https:\/\/secure.gravatar.com\/avatar\/6f663bcf3fe53adc928a8eae7c7b66bc?s=48&d=mm&r=g","96":"https:\/\/secure.gravatar.com\/avatar\/6f663bcf3fe53adc928a8eae7c7b66bc?s=96&d=mm&r=g"},"meta":[],"_links":{"self":[{"href":"https:\/\/www.equifaxsecurity2017.com\/wp-json\/wp\/v2\/users\/1"}],"collection":[{"href":"https:\/\/www.equifaxsecurity2017.com\/wp-json\/wp\/v2\/users"}]}}]

22.     Those victims who were able to access the Equifax website to verify if they were victims of the Data Breach encountered more evidence of Equifax's bumbling response. To use the website, it appeared that Equifax was asking victims to give up any right to sue TrustedID, an Equifax entity providing identity monitoring services. Equifax appears to have changed the terms of service for that website after an outcry from consumers and consumer protection officials.

23.     Aside from potentially luring victims into jeopardizing their right to sue, the Equifax website did not provide victims useful information on which they could act to protect their identities. Some victims who checked the website and were told they had not been affected were given the opposite answer when they checked later on a phone using the same information.

24.     For example, entering two made-up identities—last names "Smith" and "Doe," both with the last six Social Security number digits "123456"—yielded the same response:



25.     Those victims who called the hotline set up to aid Equifax victims fared little better. They were greeted by unprepared customer service agents without any helpful information. This complaint provides one example:



26.     If a victim set up a credit freeze, Equifax provided a 10-digit personal identification number ("PIN"). Such PINs are supposed to be difficult to guess, but the PINs Equifax is providing are based on the time and date the person set up a freeze; thus, undercutting one of the key tools victims can use to prevent identify theft.

**C.     Equifax's Failures Have Harmed and Will Continue to Harm Breach Victims**

27.     While Equifax's response to the Data Breach has been almost comically inept, the harm for victims is terribly serious. As a result of the Data Breach, criminals now have access to the essential building blocks to steal the identities of 143 million Americans, roughly 44 percent of the population.

28.     The Equifax Data Breach has greatly increased the victims' risk of identity theft relative to the time before the Data Breach. Unlike the credit and debit card numbers stolen in some of the other recent high-profile data breaches, much of the information furnished here cannot simply be changed, and will continue to be valuable to identity thieves for many years.

29.     As the Government Accountability Office reported in 2012, individuals who experience a data breach involving their Social Security number and dates of birth experience a much higher likelihood of being a victim of an identity crime. Social Security numbers, dates of birth, and names "are among the three personal identifiers most often sought by identity thieves," according to the GAO.

30.     The Equifax Data Breach released all those personal identifiers, putting victims at

increased risk of credit/debit card fraud, financial identity theft, tax fraud/identity theft, account takeovers, social identity fraud, and other harms.

31.     Equifax's website for providing information to Data Breach victims acknowledges that they may already have experienced identity theft, including an answer for people who have been notified by their bank that their account "has been improperly accessed":

| - | My bank notified me that my account has been improperly accessed. What should I do? |
|---|---|

If you believe that your bank account has been compromised, please work with your local financial institution and local law enforcement agencies.

32.     The same website recommends that victims "remain vigilant for incidents of fraud and identity theft[.]"

33.     Equifax was aware of the increased risk of identity theft that data breaches cause, and the impacts of that identity theft.

34.     Equifax has published a pamphlet called "A Lasting Impact: The Emotional Toll of Identity Theft" discussing the "real" impacts that identity theft victims face, which advises that to avoid identify theft people should keep their Social Security numbers, drivers licenses, and addresses private.

35.     Elsewhere, Equifax explained that to protect themselves from identify theft, people should "[k]eep your personal information secure online" and "[s]ecure your Social Security Number."

36.     One way identify theft could happen, Equifax warned, was the theft "of electronic records through a data breach":



37.     Equifax has also acknowledged the increased risk that victims face by offering victims a one-year trial period of its proprietary credit monitoring service, TrustedID. But victims' increased risk of identity theft will last far beyond that one-year period. Identity thieves commonly wait years to commit fraud using breached data.

38.     While victims are left vulnerable to identify theft, three top Equifax executives may have cashed out on the Data Breach, reportedly selling millions of dollars of stock after the company became aware of the breach but before the public found out.

## VI.     CLASS ACTION ALLEGATIONS

**A.     Class Definition(s)**

**1.     National Class**

39.     Pursuant to Fed. R. Civ. P. 23(a), (b)(2), (b)(3) and (c)(4), Plaintiffs seek relief on behalf of themselves and as representatives of a proposed nationwide class ("Nationwide Class"), defined as follows:

> All natural persons in the United States whose personally identifying information ("PII")
> was compromised as a result of the Data Breach.

### 2.   Statewide Classes

40.   Pursuant to Fed. R. Civ. P. 23, Plaintiffs assert claims under the laws of individual states, and on behalf of separate statewide subclasses, for each of the following states:

  a.  California

  b.  Georgia

  c.  New York

  d.  Rhode Island

  e.  West Virginia

Each proposed statewide class ("Statewide Class") is defined as follows:

All natural persons who are citizens of [STATE] whose PII was compromised as a result of the Data Breach.

41.   Except where otherwise noted, "Class" or "Class members" shall refer to members of the Nationwide Class and each of the Statewide Classes.

42.   Excluded from the Class are Defendant and any of its affiliates, parents or subsidiaries; all employees of Defendant; as well as the Court and its personnel presiding over this action.

43.   **Numerosity.**  The proposed Class is sufficiently numerous, as 143 million Data Breach victims had their PII compromised, and they are dispersed throughout the United States, making joinder of all members impracticable.  Class members can be readily identified and ascertained through the records maintained by Equifax.

44.   **Commonality.**  Common questions of fact and law exist for each cause of action and predominate over questions affecting only individual class members, including:

  a.   Whether Equifax had a legal duty to use reasonable security measures to protect Class members' PII;

  b.   Whether Equifax timely, accurately, and adequately informed Class members that their PII had been compromised;

  c.   Whether Equifax breached its legal duty by failing to protect Class members' PII;

  d.   Whether Equifax acted reasonably in securing Class members' PII;

  e.   Whether Class members are entitled to actual damages and/or statutory damages; and

f.      Whether Class members are entitled to injunctive relief.

45.     **Typicality.**  Plaintiffs' claims are typical of the claims of members of the proposed Class because, among other things, Plaintiffs and Class members sustained similar injuries as a result of Equifax's uniform wrongful conduct and their legal claims all arise from the same conduct by Equifax.

46.     **Adequacy.**  Plaintiffs will fairly and adequately protect the interests of the proposed Class.  Plaintiffs' interests do not conflict with other Class members' interests and they have retained counsel experienced in complex class action and data privacy litigation to prosecute this case on behalf of the Class.

47.     **Rule 23(b)(3).**  In addition to satisfying the prerequisites of Rule 23(a), Plaintiffs satisfy the requirements for maintaining a class action under Rule 23(b)(3).  Common questions of law and fact predominate over any questions affecting only individual Class members and a class action is superior to individual litigation.  The amount of damages available to individual plaintiffs is insufficient to make litigation addressing Equifax's conduct economically feasible in the absence of the class action procedure.  Individualized litigation also presents a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

48.     **Rule 23(b)(2).**  Plaintiffs also satisfy the requirements for maintaining a class action under Rule 23(b)(2).  Equifax has acted or refused to act on grounds that apply generally to the proposed Class, making final declaratory or injunctive relief appropriate with respect to the proposed Class as a whole.

49.     Rule 23(c)(4).  This action also satisfies the requirements for maintaining a class action under Rule 23(c)(4).  The claims of Class members are composed of particular issues that are common to all Class members and capable of class wide resolution that will significantly advance the litigation.

## VII.   CLAIMS FOR RELIEF

**Claims Asserted on Behalf of the Nationwide Class:**

### COUNT I —
### WILLFUL VIOLATION OF THE FAIR CREDIT REPORTING ACT,
### 15 U.S.C. § 1681, *ET SEQ.*

**1.   Overview**

50.   Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

51.   Plaintiffs and the Class bring this claim to recover damages suffered as a result of Equifax's below-described willful violations of the Fair Credit Reporting Act (herein, "FCRA" or "the Act"), 15 U.S.C. § 1681 et seq.

52.   As individuals, Plaintiffs and Nationwide Class members are consumers entitled to the protections of FCRA.  15 U.S.C. § 1681a(c).

53.   Congress, in enacting FCRA, found that "[c]onsumer reporting agencies," like Equifax, "have assumed a vital role in assembling and evaluating consumer credit and other information on consumers" and, as a result, "[t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, *and a respect for the consumer's right to privacy*." 15 U.S.C. § 1681(a)(3)-(4) (emphasis added).

54.   Under FCRA, a "consumer reporting agency" is defined as "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties . . . ."  15 U.S.C. § 1681a(f).

55.   Equifax is a consumer reporting agency under FCRA because it, for monetary fees, regularly engages in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties.

56.   Congress further noted that one purpose of the Act is to "require that consumer reporting agencies *adopt reasonable procedures* for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, *with regard to the confidentiality*, accuracy, relevancy, *and proper utilization of such information*." *See* 15 U.S.C. § 1681(b) (emphasis added).

57.     As detailed below, Equifax failed to fulfill its statutory obligations under the Act by, at a minimum: (a) failing to adopt reasonable procedures to protect the confidentiality, privacy, and proper utilization of Plaintiffs' and the Nationwide Class members' personal consumer, credit, and other personally-identifying information including names, social security numbers, credit card numbers, account numbers, credit histories and other credit data; (b) furnishing and/or disclosing that information to improper third parties; (c) failing to take swift action upon learning of unauthorized access to Plaintiffs' and the Nationwide Class members' personal information and its unauthorized dissemination to third parties; and (d) disclosing, exposing, and/or making known to unauthorized third parties, the medical information of Plaintiffs and Nationwide Class members.

   **2.      Violations of 15 U.S.C. §1681e(a) – Willful Failure to Maintain Reasonable Security Measures**

58.     15 U.S.C. § 1681e(a) requires that "consumer reporting agenc[ies]," such as Equifax, "shall maintain reasonable procedures designed to avoid violations of section 1681c of this title and to limit the furnishing of consumer reports to the purposes listed under [15 U.S.C. § 1681b]." 15 U.S.C. § 1681e(a).

59.     These procedures, the Act goes on to explain: "shall require that prospective users of the information identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose." *Id.*

60.     Moreover, the Act directs that "[n]o consumer reporting agency may furnish a consumer report to any person if it has reasonable grounds for believing that the consumer report will not be used for a [permissible] purposed listed in section 1681b of this title." *Id.*

61.     The Federal Trade Commission has explained that 15 U.S.C.§ 1681e(a) requires consumer reporting agencies to "have reasonable and effective procedures to limit unauthorized access to its databases. Such procedures may include a system of monitoring access to its database of consumer reports, including a system to monitor anomalies and other suspicious activity to guard against unauthorized access . . . . Procedures also may include . . . installation and use of appropriate computer hardware and software. . . ." Fed. Trade Comm'n, *40 Years of Experience with the Fair Credit Reporting Act* at 66 (July 2011).

62.    And, the Federal Trade Commission ("FTC") has pursued enforcement actions against consumer reporting agencies under the FCRA for failing "take adequate measures to fulfill their obligations to protect information contained in consumer reports, as required by the" FCRA, in connection with data breaches.

63.    Equifax violated Section 1681e(a) by failing to implement and maintain reasonable, industry-standard security measures to ensure that Plaintiffs' and the Nationwide Class members' consumer credit information was not accessed for an impermissible purpose.

64.    Equifax further violated Section 1681e(a) by failing to require prospective users of information to identify themselves as well as their purpose before permitting them access to Plaintiffs' and the Nationwide Class members' consumer credit information.

65.    Equifax's failure to adopt and maintain such protective procedures directly and proximately resulted in the theft of and improper access to Plaintiffs' and the Nationwide Class members' consumer and credit information as well as its wrongful dissemination to unauthorized third parties in the public domain.

### 3.    Violations of 15 U.S.C. §1681b(a) – Furnishing Consumer Data Without a Permissible Purpose

66.    15 U.S.C. § 1681b provides that a "consumer reporting agency," like Equifax, "may furnish a consumer report under the following circumstances and no other:" (1) in response to a court order; (2) in response to a consumer request; (3) to a person which it has reason to believe will use the information for a credit, employment, insurance, licensing, or other legitimate business purpose; and (4) in response to a request by a government agency. *Id*.

67.    FCRA defines a "consumer report" as: "[A]ny written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of establishing the consumer's eligibility for credit or insurance to be used primarily for personal, family, or household purposes; employment purposes, or any other purpose authorized under [15 U.S.C. §] 1681(b)." 15 U.S.C. § 1681a(d)(1).

68.     Plaintiffs' and the Nationwide Class members' personally-identifying and other consumer information including their names, social security numbers, credit card numbers, account numbers, credit history, and other credit data constitute a "consumer report" within the meaning of 15 U.S.C. § 1681a(d)(1) because that information bears on their credit-worthiness, personal characteristics, and character and was collected by Equifax for the purpose of establishing their eligibility for credit.

69.     Equifax violated § 1681b by furnishing and/or providing a written, oral, or other communications and/or documents and files which contained Plaintiffs' and the Nationwide Class members' personally-identifying and other consumer information to unauthorized third parties, who Equifax had no reason to believe would use the information for a permissible purpose.

**4.     Violations of 15 U.S.C. §1681b(g) – Willful Disclosure of Confidential Medical Data**

70.     In addition to ensuring the protection of personal consumer credit data, FCRA lays out special requirements for consumer reporting agencies with respect to confidential medical information, and restricting its dissemination or disclosure. *See, e.g.*, 15 U.S.C. §§ 1681a(d)(3); 1681b(g); 1681 c(a)(6).

71.     Upon information and belief Equifax maintains "medical information" as a component of its effort to assess the credit-worthiness of consumers. Indeed, according to a review published by the Federal Reserve, nearly half of debt collection tradelines on credit reports are for medical debts. See Robert Avery, Paul Calem, Glenn Canner, & Raphael Bostic, An Overview of Consumer Data and Credit Reporting, Fed. Reserve Bulletin (RB), p. 69 (Feb. 2003).

72.     Equifax violated § 1681b by disclosing, exposing, and/or making known to unauthorized third parties, the medical information of Plaintiffs and the Nationwide Class members, as detailed herein, and they were harmed as a result.

**5.     Violations of 15 U.S.C. §1681c-1 – Willful Failure to Respond to Suspected Identify Theft**

73.     15 U.S.C. §1681c-1 imposes obligations on consumer reporting agencies like Equifax upon suspicion of fraud or identity theft.

74.     Specifically, §1681c-1 provides that "[u]pon the direct request of a consumer, or an individual acting on behalf of . . . of a consumer, who asserts in good faith a suspicion that the consumer

has been or is about to become a victim of fraud or related crime, including identity theft, a consumer reporting agency shall . . . include a fraud alert in the file of that consumer . . . for a period of not less than 90 days . . . and refer the information regarding the fraud alert . . . to each of the other consumer reporting agencies," and provide certain disclosures to consumers as noted in §1681c-1(a)(2). *See* 15 U.S.C. §1681c-1(a)(2).

75.     On information and belief, Equifax was given notice of that fact that millions of consumers were at risk of becoming the victim of fraud and identity theft due to the unprecedented Data Breach described above, more than one month before it was made known to the public.

76.     Nevertheless, and in violation of its obligations under 15 U.S.C. §1681c-1, Equifax did not make timely disclosures to affected consumers, did not include fraud alerts to prevent identity theft following the Data Breach, and did not make timely notifications to other consumer reporting agencies; as a result, in addition to the harm described herein, Plaintiffs and the Nationwide Class were put at additional risk of fraud and identity theft, and were forced to incur additional costs to prevent the theft themselves.

### 6.     Plaintiffs and the Nationwide Class Suffered Damages as a Proximate Result of Equifax's Willful Violations of FCRA and are Entitled to Relief

77.     Equifax willfully violated the above-described provision of FCRA.  The willful nature of Equifax's violations is supported by'' Equifax's other data breaches in the past.  Further, Equifax touts itself as an industry leader in breach prevention; thus, Equifax was well aware of the importance of the measures organizations should take to prevent data breaches, and willingly failed to take them.

78.     Equifax also acted willfully because it knew or should have known about its legal obligations regarding data security and data breaches under the FCRA.  These obligations are well established in the plain language of the FCRA and in the promulgations of the Federal Trade Commission.  *See, e.g.,* 55 Fed. Reg. 18804 (May 4, 1990), *1990 Commentary On The Fair Credit Reporting Act.* 16 C.F.R. Part 600, Appendix To Part 600, Sec. 607 2E.  Equifax obtained or had available these and other substantial written materials that apprised them of their duties under the FCRA. Any reasonable consumer reporting agency knows or should know about these requirements. Despite knowing of these legal obligations, Equifax acted consciously in breaching known duties regarding data

security and data breaches and depriving Plaintiffs and other members of the classes of their rights under the FCRA.

79.   Equifax's willful and/or reckless conduct provided a means for unauthorized intruders to obtain and misuse Plaintiffs' and Nationwide Class members' personal information for no permissible purposes under the FCRA.

80.   As a direct and proximate result of Equifax's willful violations of FCRA, and the resulting Data Breach described above, the personally-identifying and consumer credit information of Plaintiffs and the Nationwide Class members was stolen and made accessible to unauthorized third parties in the public domain.

81.   As a direct and proximate result of Equifax's willful violations of FCRA, and the resulting Data Breach described above, Plaintiffs and Nationwide Class members were and continue to be damaged in the form of, without limitation, an increased cost of credit associated with misuse of their credit data, expenses for credit monitoring and identity theft insurance, other out-of-pocket expenses, anxiety, emotional distress, loss of privacy and other economic and non-economic harm.

82.   As a result of Equifax's willful failure to "to comply with any requirement imposed under" the Act, it is liable to Plaintiffs and the Nationwide Class members for actual and statutory damages, together with their fees and costs. *See* 15 U.S.C. § 1681n (discussing willful noncompliance).

83.   Plaintiffs and the Nationwide Class members, therefore, are entitled to compensation for their actual damages including, inter alia, (i) an increased cost of credit associated with misuse of their credit data; (ii) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and identity fraud pressed upon them by the Data Breach described above; (iii) the value of their time spent mitigating identity theft and/or identity fraud and/or the increased risk of identity theft and/or identity fraud; (iv) deprivation of the value of their personally-identifying information, personal health information, and credit data for which there is a well-established national and international market; (v) anxiety and emotional distress; together with (vi) statutory damages of not less than $100, and not more than $1000, each; and (vii) attorneys' fees, litigation expenses and costs, pursuant to 15 U.S.C. §1681n(a).

**COUNT II —**
**Negligent Violation of the Fair Credit Reporting Act**

84.     Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

85.     Plaintiffs and the Nationwide Class bring this claim to recover damages suffered as a result of Equifax's below-described negligent violations of the Fair Credit Reporting Act (herein, "FCRA" or "the Act"), 15 U.S.C. § 1681 *et seq*.

86.     As detailed above, as individuals, Plaintiffs and Nationwide Class members are consumers entitled to the protections of FCRA, 15 U.S.C. § 1681a(c), and 15 U.S.C. § 1681a(f).

87.     Equifax is a consumer reporting agency under FCRA because it, for monetary fees, regularly engages in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties. 15 U.S.C. § 1681 a(f).

88.     As detailed above, Equifax failed to fulfill its statutory obligations under the Act by, at a minimum: (a) failing to adopt reasonable procedures to protect the confidentiality, privacy, and proper utilization of Plaintiffs and the Nationwide Class members' personal consumer, credit, and other personally-identifying information including their names, social security numbers, credit card numbers, account numbers, credit histories and other credit data; (b) furnishing and/or disclosing that information to improper third parties; (c) failing to take swift action upon learning of unauthorized access to Plaintiffs and the Nationwide Class members' personal information and its unauthorized dissemination to third parties; and (d) disclosing, exposing, and/or making known to unauthorized third parties, the medical information of Plaintiffs and Nationwide Class members.

89.     Specifically, Equifax violated FCRA by willfully and/or negligently (1) failing to adopt and maintain reasonable procedures to protect the confidentiality of consumer information in violation of 15 U.S.C. § 1681e; (2) furnishing and/or disclosing consumer information to unauthorized third parties without a permissible purpose in violation of 15 U.S.C. § 1681b; (3) disclosing confidential medical information in violation of 15 U.S.C. §§ 1681b(g)(4), and 1681b(g)(3)(A); and (4) failing to respond to identity theft or the suspicion of identity theft in violation of 15 U.S.C. §§ 1681c-1..

90.     15 U.S.C. § 1681b provides that a "consumer reporting agency," like Equifax, "may

furnish a consumer report under the following circumstances and no other:" (1) in response to a court order; (2) in response to a consumer request; (3) to a person which it has reason to believe will use the information for a credit, employment, insurance, licensing, or other legitimate business purpose; and (4) in response to a request by a government agency. *Id.*

91.   FCRA defines a "consumer report" as: "[A]ny written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of establishing the consumer's eligibility for credit or insurance to be used primarily for personal, family, or household purposes; employment purposes, or any other purpose authorized under [15 U.S.C. §] 1681(b)." 15 U.S.C. § 1681a(d)(1).

92.   Plaintiffs and the Nationwide Class members' personally-identifying and other consumer information including their names, social security numbers, credit card numbers, account numbers, credit history, and other credit data constitute a "consumer report" within the meaning of 15 U.S.C. § 1681a(d)(1) because that information bears on their credit-worthiness, personal characteristics, and character and was collected by Equifax for the purpose of establishing their eligibility for credit.

93.   Equifax violated § 1681b by furnishing and/or providing a written, oral, or other communications and/or documents and files which contained Plaintiffs and the Nationwide Class members' personally-identifying and other consumer information to unauthorized third parties, who Equifax had no reason to believe would use the information for a permissible purpose.

94.   Equifax negligently violated the above-described provision of FCRA. Equifax's negligent failure to maintain reasonable procedures is supported by Equifax's other data breaches in the past. Further, as an enterprise claiming to be an industry leader in data breach prevention, Equifax was well aware of the importance of the measures organizations should take to prevent data breaches, yet failed to take them.

95.   Equifax's negligent conduct provided a means for unauthorized intruders to obtain and misuse Plaintiffs' and Nationwide Class members' personal information for no permissible purposes under FCRA.

96.     As a direct and proximate result of Equifax's negligent violations of FCRA, and the resulting Data Breach described above, the personally-identifying and consumer credit information of Plaintiffs and the Nationwide Class members was stolen and made accessible to unauthorized third parties in the public domain.

97.     As a direct and proximate result of Equifax's negligent violations of FCRA, and the resulting Data Breach described above, Plaintiffs and Nationwide Class members were and continue to be damaged in the form of, without limitation, an increased cost of credit associated with misuse of their credit data, expenses for credit monitoring and identity theft insurance, other out-of-pocket expenses, anxiety, emotional distress, loss of privacy and other economic and non-economic harm.

98.     Plaintiffs and Nationwide Class members, therefore, are entitled to compensation for their actual damages including, inter alia, (i) an increased cost of credit associated with misuse of their credit data; (ii) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and identity fraud pressed upon them by the Data Breach described above; (iii) the value of their time spent mitigating identity theft and/or identity fraud and/or the increased risk of identity theft and/or identity fraud; (iv) deprivation of the value of their personally-identifying information, personal health information, and credit data for which there is a well-established national and international market; (v) anxiety and emotional distress; together with (vi) attorneys' fees, litigation expenses and costs, pursuant to 15 U.S.C. §1681o(a).

### COUNT III —
### Negligence

99.     Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

100.     Equifax owed a duty to Plaintiffs and the Nationwide Class members to exercise reasonable care in safeguarding and protecting their highly sensitive and personal information.  This duty included, among other things, designing, maintaining, monitoring, testing Equifax's security systems, protocols, and practices, as well as taking other reasonable security measures to protect and adequately secure the PII of Plaintiffs and Nationwide Class members from unauthorized access.

101.     Equifax owed a duty to Class members to implement administrative, physical and technical safeguards, such as intrusion detection processes that detect data breaches in a timely manner,

to protect and secure Plaintiffs' and Nationwide Class members' PII.

102.    Equifax owed a duty of care to Plaintiffs and Nationwide Class members because they were foreseeable and probable victims of any inadequate security practices.  It was foreseeable that if Equifax did not take reasonable security measures, the PII of Plaintiffs and members of the Nationwide Class would be stolen.  Major corporations, and particularly credit rating agencies, like Equifax face a higher threat of security breaches than smaller companies due in part to the large amounts of data they possess.  Equifax knew or should have known its security systems were inadequate, particularly in light of the prior data breaches that Equifax had experienced, and yet Equifax failed to take reasonable precautions to safeguard the PII of Plaintiffs and members of the Nationwide Class.

103.    Equifax owed a duty to disclose the material fact that its data security practices were inadequate to safeguard Nationwide Class members' PII.

104.    Equifax had a duty to timely and accurately notify Plaintiffs and Nationwide Class members if their PII was compromised so that Plaintiffs and Nationwide Class members could act to mitigate the harm caused by the loss of opportunity to control how their PII was used.

105.    Equifax breached its duties by, among other things: (a) failing to implement and maintain adequate data security practices to safeguard Nationwide Class members' PII; (b) failing to detect the Data Breach in a timely manner; (c) failing to disclose that Defendant's data security practices were inadequate to safeguard Nationwide Class members' PII; and (d) failing to provided adequate and timely notice of the breach.

106.    But for Equifax's breach of its duties, Nationwide Class members' PII would not have been accessed by unauthorized individuals.

107.    Plaintiffs and Nationwide Class members were foreseeable victims of Equifax's inadequate data security practices.  Equifax knew or should have known that a breach of its data security systems would cause damages to Nationwide Class members.

108.    Equifax's negligent conduct provided a means for unauthorized intruders to obtain Plaintiffs' and the Nationwide Class members' PII and consumer reports for no permissible purposes under FCRA.

109.    As a result of Equifax's willful failure to prevent the Data Breach, Plaintiffs and

Nationwide Class members suffered injury, which includes but is not limited to: (1) exposure to a heightened, imminent risk of fraud, identity theft, and financial harm; (2) the loss of the opportunity to control how their PII is used; (3) the diminution in the value and/or use of their PII; (4) the compromise, publication, and/or theft of their PII; (5) out-of-pocket costs associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of financial accounts; (6) lost opportunity costs associated with the effort expended and the loss of productivity from addressing and attempting to mitigate the actual and future consequences of the breach, including but not limited to efforts spent researching how to prevent, detect, contest and recover from identity theft, as well as the time and effort Plaintiffs and Nationwide Class members have expended to monitor their financial accounts and credit histories to guard against identity theft; (7) costs associated with the ability to use credit and assets frozen or flagged due to credit misuse, including complete credit denial and/or increased costs to use credit, credit scores, credit reports and assets; (8) unauthorized use of compromised PII to open new financial accounts; (9) tax fraud and/or other unauthorized charges to financial accounts and associated lack of access to funds while proper information is confirmed and corrected; (10) the continued risk to their PII, which remain in Equifax's possession and are subject to further breaches so long as Equifax fails to undertake appropriate and adequate measures to protect the PII in its possession; and (10) future costs in terms of time, effort and money that will be expended, to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives.

110.    The damages to Plaintiffs and Nationwide Class members were a proximate, reasonably foreseeable result of Equifax's breaches of its duties.

111.    Plaintiffs and the Nationwide Class are also entitled to damages and reasonable attorneys' fees and costs.  Plaintiffs also seek reasonable attorneys' fees and costs under applicable law including Federal Rule of Civil Procedure 23 and California Code of Civil Procedure § 1021.5.

### COUNT IV —
### Negligence Per Se

112.    Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

113.    Under FCRA, 15 U.S.C. §§ 1681e, Equifax is required to "maintain reasonable procedures designed to . . . limit the furnishing of consumer reports to the purposes listed under section

1   1681b of this title." 15 U.S.C. § 1681e(a).

2       114.    Under FCRA, 15 U.S.C. §§ 168b, a "consumer reporting agency," like Equifax, "may

3   furnish a consumer report under the following circumstances and no other:" (1) in response to a court

4   order; (2) in response to a consumer request; (3) to a person which it has reason to believe will use the

5   information for a credit, employment, insurance, licensing, or other legitimate business purpose; and (4)

6   in response to a request by a government agency. *Id.*

7       115.    Defendant failed to maintain reasonable procedures designed to limit the furnishing of

8   consumer reports to the purposes outlined under section 1681b of FCRA.

9       116.    Under 15 U.S.C. §1681c-1, FCRA imposes obligations on consumer reporting agencies

10  like Equifax to make timely disclosures to consumers upon suspicion of fraud or identity theft.

11      117.    Specifically, §1681c-1 provides that "[u]pon the direct request of a consumer, or an

12  individual acting on behalf of . . . of a consumer, who asserts in good faith a suspicion that the consumer

13  has been or is about to become a victim of fraud or related crime, including identity theft, a consumer

14  reporting agency shall . . . include a fraud alert in the file of that consumer . . . for a period of not less

15  than 90 days . . . and refer the information regarding the fraud alert . . . to each of the other consumer

16  reporting agencies," and provide certain disclosures to consumers as noted in §1681c-1(a)(2). *See* 15

17  U.S.C. §1681c-1(a)(2).

18      118.    On information and belief, Equifax was given notice of the fact that millions of

19  consumers were at risk of becoming the victim of fraud and identity theft due to the unprecedented Data

20  Breach described above, months before it was made known to the public.

21      119.    Nevertheless, and in violation of its obligations under 15 U.S.C. §1681c-1, Equifax did

22  not make timely disclosures to affected consumers, did not include fraud alerts to prevent identity theft

23  following the Data Breach, and did not make timely notifications to other consumer reporting agencies;

24  as a result, in addition to the harm described herein, Plaintiffs and the Nationwide Class were put at

25  additional risk of fraud and identity theft, and were forced to incur additional costs to prevent the theft

26  themselves.

27      120.    Under 15 U.S.C. §§ 1681a(d)(3); 1681b(g); 1681 c(a)(6), FCRA imposes requirements

28  for consumer reporting agencies with respect to confidential medical information, and restricting its

dissemination or disclosure. In violation of these obligations, Equifax disclosed, exposed, and/or made known to unauthorized third parties, the medical information of Plaintiffs and the Nationwide Class members.

121.    Plaintiffs and the Nationwide Class members are within the class of persons that FCRA was intended to protect.

122.    Plaintiffs and Nationwide Class members were foreseeable victims of Equifax's violation of FCRA.  Equifax knew or should have known that a breach of its data security systems would cause injuries to Nationwide Class members.

123.    Equifax likewise violated Section 5(a) of the FTC Act, which provides that 'unfair or deceptive acts or practices in or affecting commerce...are...declared unlawful." 15 U.S.C. § 45(a)(1).

124.    By failing to use reasonable measures to protect consumers' PII and by not complying with applicable industry standards as discussed above, Equifax violated Section 5 of the FTC Act. Equifax's conduct was particularly unreasonable given the sensitive nature and vast amount of PII it had collected, obtained and stored, and the foreseeable consequences that a data breach of this information would substantially harm Plaintiffs and the Nationwide Class.

125.    Equifax was required under the Gramm-Leach-Bliley Act ("GLBA") to satisfy certain standards relating to administrative, technical, and physical safeguards:

(1) to insure the security and confidentiality of customer records and information;

(2) to protect against any anticipated threats or hazards to the security or integrity of such records; and

(3) to protect against unauthorized access to or use of such records or information which could result in substantial harm or inconvenience to any customer.

126.    In order to satisfy their obligations under the GLBA, Equifax was also required to "develop, implement, and maintain a comprehensive information security program that is [1] written in one or more readily accessible parts and [2] contains administrative, technical, and physical safeguards that are appropriate to [its] size and complexity, the nature and scope of [its] activities, and the sensitivity of any customer information at issue." See 16 C.F.R. § 314.4

127.    In addition, under the Interagency Guidelines Establishing Information Security

Standards, 12 C.F.R. pt. 225, App. F., Equifax had an affirmative duty to "develop and implement a risk-based response program to address incidents of unauthorized access to customer information in customer information systems." *See id.*

128.    Further, when Equifax became aware of "unauthorized access to sensitive customer information," it should have "conduct[ed] a reasonable investigation to promptly determine the likelihood that the information has been or will be misused" and "notif[ied] the affected customer[s] as soon as possible." *See id.*

129.    Equifax violated the GLBA by failing to "develop, implement, and maintain a comprehensive information security program" with "administrative, technical, and physical safeguards" that were "appropriate to [its] size and complexity, the nature and scope of [its] activities, and the sensitivity of any customer information at issue." This includes, but is not limited to, Equifax's failure to implement and maintain adequate data security practices to safeguard Nationwide Class members' PII; (b) failing to detect the Data Breach in a timely manner; and (c) failing to disclose that Defendant's data security practices were inadequate to safeguard Nationwide Class members' PII.

130.    Equifax also violated the GLBA by failing to "develop and implement a risk-based response program to address incidents of unauthorized access to customer information in customer information systems." This includes, but is not limited to, Equifax's failure to notify appropriate regulatory agencies, law enforcement, and the affected individuals themselves of the Data Breach in a timely and adequate manner.

131.    Equifax also violated the GLBA by failing to notify affected consumers as soon as possible after it became aware of unauthorized access to sensitive customer information.

132.    Plaintiffs and Nationwide Class members were foreseeable victims of Equifax's violation of the GLBA. Equifax knew or should have known that its failure to take reasonable measures to prevent a breach of its data security systems, and failure to timely and adequately notify the appropriate regulatory authorities, law enforcement, and Nationwide Class members themselves would cause damages to Nationwide Class members.

133.    Defendant's failure to comply with the applicable laws and regulations, including FCRA, the FTC Act and the GLBA, constitutes negligence *per se*.

134.    But for Equifax's violation of the applicable laws and regulations, Nationwide Class members' PII would not have been accessed by unauthorized individuals.

135.    As a direct and proximate result of Equifax's negligence per se, Plaintiffs and the Nationwide Class members suffered, and continue to suffer, injuries, which include but are not limited to exposure to a heightened, imminent risk of fraud, identity theft, and financial harm.  Plaintiffs and Nationwide Class members must more closely monitor their financial accounts and credit histories to guard against identity theft.  Nationwide Class members also have incurred, and will continue to incur on an indefinite basis, out-of-pocket costs for obtaining credit reports, credit freezes, credit monitoring services, and other protective measures to deter or detect identity theft. The unauthorized acquisition of Plaintiffs and Nationwide Class members' PII has also diminished the value of their PII.

136.    Therefore, Plaintiffs and Nationwide Class members are entitled to damages in an amount to be proven at trial.

### COUNT V —
### Declaratory Judgment

137.    Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

138.    As previously alleged, Plaintiffs and the Nationwide Class have stated claims against Equifax based on negligence and statutory violations.

139.    Equifax has failed to live up to its obligations to provide reasonable security measures for the PII of Plaintiffs and the Nationwide Class.

140.    Equifax still possesses PII pertaining to Plaintiffs and Nationwide Class members.

141.    In addition, the Data Breach has rendered Equifax's system even more vulnerable to unauthorized access and requires that Equifax immediately take even more stringent measures to currently safeguard the PII of Plaintiffs and the Nationwide Class going forward.

142.    Equifax has made no representation that it has remedied the vulnerabilities in its data security systems.

143.    An actual controversy has arisen in the wake of the Data Breach regarding Equifax's *current* obligations to provide reasonable data security measures to protect the PII of Plaintiffs and the Nationwide Class.  On information and belief, Equifax maintains that its security measures were, and

1  remain, reasonably adequate.  On information and belief, Equifax further denies that it previously had or

2  now has any obligation to better safeguard the PII of Plaintiffs and the Nationwide Class.

3      144.    Plaintiffs thus seek a declaration that to comply with its existing obligations, Equifax

4  must implement specific additional, prudent industry security practices, as outlined below, to provide

5  reasonable protection and security to the PII of Plaintiffs and the Nationwide Class.

6      145.    Specifically, Plaintiffs and the class seek a declaration that (a) Equifax's existing security

7  measures do not comply with its obligations, and (b) that to comply with its obligations, Equifax must

8  implement and maintain reasonable security measures on behalf of Plaintiffs and the Nationwide Class,

9  including, but not limited to: (1) engaging third party security auditors/penetration testers as well as

10 internal security personnel to conduct testing consistent with prudent industry practices, including

11 simulated attacks, penetration tests, and audits on Equifax's systems on a periodic basis; (2) engaging

12 third party security auditors and internal personnel to run automated security monitoring consistent with

13 prudent industry practices; (3) auditing, testing, and training its security personnel regarding any new or

14 modified procedures; (4) purging, deleting and destroying, in a secure manner, data not necessary for its

15 business operations; (5) conducting regular database scanning and securing checks consistent with

16 prudent industry practices; (6) periodically conducting internal training and education to inform internal

17 security personnel how to identify and contain a breach when it occurs and what to do in response to a

18 breach consistent with prudent industry practices; (7) receiving periodic compliance audits by a third

19 party regarding the security of the computer systems Equifax uses to store the personal information of

20 Plaintiffs and the Nationwide Class members; (8) meaningfully educating Plaintiffs and the Nationwide

21 Class members about the threats they face as a result of the loss of their PII to unauthorized third parties,

22 as well as the steps they must take to protect themselves; and (9) providing ongoing identity theft

23 protection, monitoring, and recovery services to Plaintiffs and Nationwide Class members.

24 **Claims Asserted on Behalf of the California Statewide Class**

25                              **COUNT VI —**
                **Violation of the California Customer Records Act**
26                  **California Civil Code Section 1798.80 *et seq.***

27      146.    Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

28      147.    Plaintiff Jennifer Saavedra brings this cause of action on behalf of the California

1   Statewide Class.

2   148.    The California Legislature enacted Civil Code section 1798.81.5 "to ensure that personal

3   information about California residents is protected."  The statute requires that any business that "owns,

4   licenses, or maintains personal information about a California resident … implement and maintain

5   reasonable security procedures and practices appropriate to the nature of the information, to protect the

6   personal information from unauthorized access, destruction, use, modification, or disclosure."

7   149.    Equifax is a "business" as defined by Civil Code section 1798.80(a).

8   150.    Each Plaintiff and member of the California Statewide Class is an "individual" as defined

9   by Civil Code section 1798.80(d).

10   151.    The information taken in the Data Breach was "personal information" as defined by Civil

11   Code sections 1798.80(e) and 1798.81.5(d), which includes "information that identifies, relates to,

12   describes, or is capable of being associated with, a particular individual, including, but not limited to, his

13   or her name, signature, Social Security number, physical characteristics or description, address,

14   telephone number, passport number, driver's license or state identification card number, insurance

15   policy number, education, employment, employment history, bank account number, credit card number,

16   debit card number, or any other financial information, medical information, or health insurance

17   information."

18   152.    The breach of the personal information of over 140,000 consumers was a "breach of the

19   security system" of Equifax as defined by Civil Code section 1798.82(g).

20   153.    By failing to implement reasonable security measures appropriate to the highly sensitive

21   and confidential nature of consumers' personal information, Equifax violated Civil Code section

22   1798.81.5.

23   154.    In addition, by failing to immediately notify all affected consumers that their personal

24   information had been acquired (or was reasonably believed to have been acquired) by unauthorized

25   persons in the Data Breach, Equifax violated Civil Code section 1798.82 of the same title.  Equifax's

26   failure to immediately notify consumers of the breach caused California Statewide Class members to

27   suffer damages because they have lost the opportunity to immediately: (i) buy identity protection,

28   monitoring, and recovery services; (ii) flag asset, credit, and tax accounts for fraud, including reporting

1   the theft of their Social Security numbers to financial institutions, credit agencies, and the Internal

2   Revenue Service; (iii) purchase or otherwise obtain credit reports; (iv) monitor credit, financial, utility,

3   explanation of benefits, and other account statements on a monthly basis for unrecognized credit

4   inquiries, Social Security numbers, home addresses, charges; (v) place and renew credit fraud alerts on a

5   quarterly basis; (vi) routinely monitor public records, loan data, or criminal records; (vii) contest

6   fraudulent charges and other forms of criminal, financial identity theft, and repair damage to credit and

7   other financial accounts; and (viii) take other steps to protect themselves and recover from identity theft

8   and fraud.

9       155.    Because it violated Civil Code sections 1798.81.5 and 1798.82, Equifax "may be

10  enjoined" under Civil Code section 1798.84(e).

11      156.    Plaintiff requests that the Court enter an injunction requiring Equifax to implement and

12  maintain reasonable security procedures to protect California Statewide Class members' PII, including,

13  but not limited to, ordering that Equifax: (1) engage third party security auditors/penetration testers as

14  well as internal security personnel to conduct testing consistent with prudent industry practices,

15  including simulated attacks, penetration tests, and audits on Equifax's systems on a periodic basis; (2)

16  engage third party security auditors and internal personnel to run automated security monitoring

17  consistent with prudent industry practices; (3) audit, test, and train its security personnel regarding any

18  new or modified procedures; (4) purge, delete and destroy, in a secure manner, data not necessary for its

19  business operations; (5) conduct regular database scanning and securing checks consistent with prudent

20  industry practices; (6) periodically conduct internal training and education to inform internal security

21  personnel how to identify and contain a breach when it occurs and what to do in response to a breach

22  consistent with prudent industry practices; (7) receive periodic compliance audits by a third party

23  regarding the security of the computer systems Equifax uses to store consumers' personal information;

24  (8) meaningfully educate Plaintiff and California Statewide Class members about the threats they face as

25  a result of the loss of their PII to unauthorized third parties, as well as the steps they must take to protect

26  themselves; and (9) provide ongoing identity theft protection, monitoring, and recovery services to

27  Plaintiff and California Statewide Class members.

28      157.    Plaintiff further requests that the Court order Equifax to (1) identify and notify all

members of the class who have not yet been informed of the Data Breach; and (2) notify affected consumers of any future data breaches by email within 24 hours of Equifax's discovery of a breach or possible breach and by mail within 72 hours.

158.    As a result of Equifax's violations of Civil Code sections 1798.81.5 and 1798.82, Plaintiff and members of the California Statewide Class have incurred and will incur damages, including but not necessarily limited to: (1) the loss of the opportunity to control how their PII is used; (2) the diminution in the value and/or use of their PII; (3) the compromise, publication, and/or theft of their PII; (4) out-of-pocket costs associated with the prevention, detection, and recovery from identity theft; (5) lost opportunity costs associated with effort expended and the loss of productivity from addressing and attempting to mitigate the actual and future consequences of the breach, including but not limited to efforts spent researching how to prevent, detect, contest and recover from identity data misuse; (6) costs associated with the ability to use credit and assets frozen or flagged due to credit misuse, including complete credit denial and/or increased costs to use credit, credit scores, credit reports and assets; (7) unauthorized use of compromised PII to open new financial accounts; (8) tax fraud and/or other unauthorized charges to financial accounts and associated lack of access to funds while proper information is confirmed and corrected; (9) the continued risk to their PII, which remain in Equifax's possession and are subject to further breaches so long as Equifax fails to undertake appropriate and adequate measures to protect the PII in its possession; and (10) future costs in terms of time, effort and money that will be expended, to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of the California Statewide Class members.

159.    Plaintiff seeks all remedies available under Civil Code section 1798.84, including actual and statutory damages, equitable relief, and reasonable attorneys' fees.  Plaintiff also seeks reasonable attorneys' fees and costs under applicable law including Federal Rule of Civil Procedure 23 and California Code of Civil Procedure § 1021.5.

## COUNT VII —
### Violation of The Unfair Competition Law
### California Business and Professions Code Section 17200 *et seq.*

160.    Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

161.    Plaintiff Jennifer Saavedra brings this cause of action on behalf of the California

1    Statewide Class.

2         162.    California's Unfair Competition Law ("UCL"), California Business & Professions Code

3    § 17200, *et seq.*, provides for relief where a defendant's acts, omissions, and practices are shown to be

4    unlawful, unfair, and fraudulent. Equifax's acts, omissions, and practices constitute unlawful and unfair

5    business practices in violation of the UCL.

6         163.    Equifax's acts, omissions, and practices constitute unlawful practices and in violation of

7    the Customer Records Act, FCRA, the FTC Act, California Civil Code §§ 1572, 1573, 1709, 1711,

8    1798.82, 1798.84; California Business & Professions Code §§ 17200, *et seq.*; California Business &

9    Professions Code 17500, *et seq.*, and California common law because Equifax failed to take adequate

10   security measures in protecting the confidentiality of Plaintiff's and the California Statewide Class

11   members' PII, Equifax unreasonably delayed informing Plaintiff and the California Statewide Class

12   about the Data Breach, and Equifax negligently released Plaintiff's and California Statewide Class

13   members' PII that was within its possession and control.

14        164.    Equifax's acts, omissions, and conduct constitute unlawful practices because they failed

15   to comport with a reasonable standard of care and public policy as reflected in statutes such as the

16   Information Practices Act of 1977, the Customer Records Act, FCRA, and FTC Act which seek to

17   protect individuals' data and ensure that entities who solicit or are entrusted with personal or medical

18   data utilize reasonable data security measures. Equifax engaged in conduct that undermines or violates

19   the stated policies underlying the California Customer Records Act and other privacy statutes.  For

20   instance, in enacting the Customer Records Act, the California Legislature stated that "[i]dentity theft is

21   costly to the marketplace and to consumers" and that "victims of identity theft must act quickly to

22   minimize the damage; therefore, expeditious notification of possible misuse of a person's personal

23   information is imperative." 2002 Cal. Legis. Serv. Ch. 1054 (A.B. 700) (WEST).  Similarly, the

24   Information Practices Act of 1977 was enacted to protect individuals' data and ensure that entities who

25   solicit or are entrusted with personal data use reasonable security measures.

26        165.    Equifax's acts, omissions, and conduct also constitute unfair business acts or practices

27   because they offend public policy and constitute immoral, unethical, and unscrupulous activities that

28   caused substantial injury, including to Plaintiff and California Statewide Class members.  The gravity of

1    harm resulting from Equifax's conduct outweighs any potential benefits attributable to the conduct and

2    there were reasonably available alternatives to further Equifax's legitimate business interests.  Equifax's

3    conduct undermines public policy reflected in statutes such as FCRA and the FTC Act.

4         166.    Equifax's acts, omissions, and conduct further constitute unfair business acts or practices

5    because Plaintiff and California Statewide Class members have been substantially injured by the

6    negligent release of their PII, which outweighs any countervailing benefits to Plaintiff and California

7    Statewide Class members.

8         167.    Equifax engaged in fraudulent business acts or practices by representing to Plaintiff and

9    California Statewide Class members that they maintain adequate data security practices and procedures

10   to safeguard PII from unauthorized disclosure, release, data breaches, and theft, and that they would

11   comply with relevant federal and state laws pertaining to the privacy and security of PII.  Had Plaintiff

12   and California Statewide Class members known about Equifax's substandard data security practices,

13   they would have taken steps to protect themselves from harm that could result from Equifax's

14   substandard data security practices.

15        168.    Equifax engaged in fraudulent business acts or practices by omitting, suppressing, and

16   concealing the material fact of the inadequacy of the data security protections for the PII of Plaintiff and

17   California Statewide Class members.  Equifax failed to disclose to Plaintiff and California Statewide

18   Class members that Equifax's computer systems and data security practices and measures failed to meet

19   legal and industry standards, were inadequate to safeguard their PII and that the risk of data breach or

20   theft was highly likely.  Had Plaintiff and California Statewide Class members known about Equifax's

21   substandard data security practices, they would have taken steps to protect themselves from harm that

22   could result from Equifax's substandard data security practices.

23        169.    Equifax's actions in engaging in the above-named unfair practices and deceptive acts

24   were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiff

25   and California Statewide Class members.  Equifax's failure to disclose such material information

26   rendered their representations of their data security practices as likely to deceive a reasonable consumer.

27   Equifax knew such facts would (a) be unknown to and not easily discoverable by Plaintiff and members

28   of the California Statewide Class; and (b) defeat Plaintiff's and the California Statewide Class members'

1    ordinary, foreseeable and reasonable expectations concerning the security of Equifax's data systems.

2        170.    An objective, reasonable person would have been deceived by Equifax's representations

3    about the security and protection of data in its databases and networks.

4        171.    As a direct and proximate result of Equifax's unlawful, unfair, and fraudulent business

5    practices, Plaintiff and members of the California Statewide Class have suffered injury in fact, and are

6    therefore entitled to relief, including restitution, declaratory relief, and a permanent injunction enjoining

7    Equifax from their unlawful and unfair practices.  Equifax's conduct caused and continues to cause

8    substantial injury to Plaintiff and California Statewide Class members.  Equifax will continue to

9    maintain Plaintiff's and California Statewide Class members' PII for the indefinite future.  Unless

10   injunctive relief is granted, Plaintiff and California Statewide Class members, who do not have an

11   adequate remedy at law, will continue to suffer harm, and the balance of equities favors Plaintiff and

12   California Statewide Class members.

13       172.    Plaintiff and California Statewide Class members seek declaratory and injunctive relief as

14   permitted by law or equity to assure that the Plaintiff and the California Statewide Class have an

15   effective remedy, including enjoining Equifax from continuing the unlawful practices as set forth above,

16   along with any other relief the Court deems just and proper under the UCL.

17       173.    Plaintiff also seek reasonable attorneys' fees and costs under applicable law including

18   Federal Rule of Civil Procedure 23 and California Code of Civil Procedure § 1021.5.X

19   **Claims Asserted on Behalf of the Georgia Statewide Class**

20

21                            **COUNT VIII —**
     **Violation of the Georgia Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-370, *et seq.***

22       174.    Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

23       175.    Plaintiffs Lauren Hoffman Taylor and Stephanie Patrick bring this cause of action on

24   behalf of themselves and the Georgia Statewide Class against Defendant.

25       176.    Plaintiffs and Equifax are persons within the meaning of O.C.G.A. § 10-1-371.

26       177.    654.    The Georgia UDTPA prohibits any "deceptive trade practices," which include

27   misrepresenting the "standard, quality, or grade" of goods or services, and engaging "in any other

28   conduct which similarly creates a likelihood of confusion or of misunderstanding."  Ga. Code. Ann. §

10-1-372(a).

178.    Plaintiffs and Georgia Statewide Class members entrusted Equifax with their PII.

179.    As alleged herein, Equifax engaged in unfair or deceptive acts or practices in the conduct of consumer transactions, including the following, in violation of the GUDPTA:

- Failure to maintain adequate information security systems and data security practices to safeguard PII belonging to Plaintiffs and Georgia Statewide Class members;

- Failure to disclose that its information security systems and data security practices were inadequate to safeguard PII from theft;

- Failure to timely and accurately disclose the Data Breach to Plaintiffs and Georgia Statewide Class members;

- Representing that Equifax's information security systems and practices have characteristics or benefits that they do not have;

- Causing likelihood of confusion or of misunderstanding as to security of Plaintiffs' and Georgia Statewide Class members' sensitive information;

- Engaging in other misleading conduct which created a likelihood of confusion or of misunderstanding.

- Continued acceptance of PII and storage of other personal information after Equifax knew or should have known of the security vulnerabilities of the systems that were exploited in the Data Breach; and

- Continued acceptance of PII and storage of other personal information after Equifax knew or should have known of the Data Breach and before it allegedly remediated the Breach.

180.    As alleged above, Equifax's failure to secure consumers' PII violates the FTCA and therefore violates the GUDTPA.

181.    Defendant had an ongoing duty to Plaintiffs and the Georgia Statewide Class to refrain from misleading and deceptive practices in the course of its business under Georgia's Consumer Protection from Deceptive Acts and Practices Law.  Specifically, Defendant owed Plaintiffs and Georgia Statewide members a duty to safeguard Plaintiffs' and the Georgia Statewide Class members sensitive data, to implement state-of-the-art cyber security controls, and to disclose all the material facts

concerning its information security systems and practices because Defendant possessed exclusive knowledge with regard to the security of its systems; yet, intentionally concealed this knowledge from Plaintiffs and the Georgia Statewide Class, and/or made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

182.     Equifax knew or should have known that its computer systems and data security practices were inadequate to safeguard the PII of Plaintiffs and Georgia Statewide Class members, deter hackers, and that the risk of a data breach was highly likely.  Furthermore, Defendant knew that, as consumers, Plaintiffs and Georgia Statewide Class members would rely upon its deceptive and misleading conduct and could not have discovered the breach on their own.

183.     As a direct and proximate result of Equifax's violation of GFBPA, Plaintiffs and Georgia Statewide Class members suffered damages including, but not limited to: an increased cost of credit associated with misuse of their credit data, expenses for credit monitoring and identify theft insurance, other out-of-pocket expenses, anxiety, emotional distress, loss of privacy and other economic and non-economic harm.

184.     In addition, Equifax violated the O.C.G.A. § 10-1-912(a) by failing to notify Plaintiffs and Georgia Statewide Class members of the Data Breach in "the most expedient time possible and without unreasonable delay."  Furthermore, Equifax failed to provide Plaintiffs and Georgia Statewide Class members with even the required minimum information for determining the scope of the Data Breach.

185.     Defendant's violations present a continuing risk to Plaintiffs and the Georgia Statewide Class, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

186.     Defendant's unlawful actions have caused and are continuing to cause injury and damages to Plaintiffs and Georgia Statewide Class members.  Pursuant to the GUDTPA, Plaintiffs and Statewide Georgia Class members are entitled to injunctive relief, including, but not limited to enjoining Defendant's unlawful and deceptive acts as set forth above, and such other relief as the Court deems just and proper, including restitutionary disgorgement.

187.     Pursuant to O.C.G.A. § 10-1-373, Plaintiffs and Statewide Georgia Class members seek

1   reasonable attorneys' fees and expenses incurred in connection with this action.

2   **Claims Asserted on Behalf of the West Virginia Statewide Class**

3                                 **COUNT IX —**
       **Violations of West Virginia Consumer Credit and Protection Act,**
4                   **W. Va. Code § 46A-1-101,** ***et seq.***

5       188.    Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

6       189.    Plaintiff John Kennedy Bailey brings this cause of action on behalf of himself and the

7   West Virginia Statewide Class against Defendant.

8       190.    Equifax, John Kennedy Bailey, and West Virginia Statewide Class members are

9   "persons" within the meaning of W. Va. Code § 46A-1-102(31).  The West Virginia Statewide Class

10  members are "consumers" within the meaning of W. Va. Code §§ 46A-6-102(2) and 46A-1-102(12).

11      191.    Equifax is engaged in "trade" or "commerce" within the meaning of W. Va. Code § 46A-

12  6-102(6).

13      192.    The West Virginia Consumer Credit and Protection Act ("West Virginia CCPA") makes

14  unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any

15  trade or commerce."  W. Va. Code § 46A-6-104.

16      193.    In the course of its business, Defendant Equifax, through its agents, employees, and/or

17  subsidiaries, violated the West Virginia CCPA as detailed above.  Specifically, Defendant held itself out

18  as a safe and trustworthy repository of consumer data and owed Plaintiff and West Virginia Statewide

19  members a duty to disclose all the material facts concerning its information security systems and

20  practices. Defendant possessed exclusive knowledge with regard to the security of its systems; yet,

21  intentionally concealed this knowledge from Plaintiff and the West Virginia Statewide Class, and/or

22  made misrepresentations that were rendered misleading because they were contradicted by withheld

23  facts. In the course of conducting business, Defendant engaged in one or more of the following unfair or

24  deceptive acts or practices as defined in W. Va. Code § 46A-6-102(7):

25      •   Causing likelihood of confusion or of misunderstanding as to the maintenance of its

26          information security systems and protection of the same and its security practices to

27          safeguard PII belonging to Plaintiff and West Virginia Statewide Class members ;

28      •   Representing that Equifax's information security systems and practices have characteristics

or benefits that they do not have;

• Causing likelihood of confusion or of misunderstanding as to security of Plaintiff's and West Virginia Statewide Class members' sensitive information;

• Engaging in other misleading conduct which created a likelihood of confusion or of misunderstanding; and

• Using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of a material fact with intent that others rely on such concealment, suppression or omission in connection with the advertising of Equifax consumer services, whether or not any persons has in fact been misled, deceived or damaged thereby.

194.    In addition, pursuant to § 46A-2A-102, Equifax violated the West Virginia CCPA by failing to notify Plaintiff and West Virginia Statewide Class members of the Data Breach without unreasonable delay.  Furthermore, Equifax failed to provide Plaintiff and West Virginia Statewide Class members with even the required minimum information for determining the scope of the Data Breach.

195.    Defendant's concealment of the true characteristics of its information security systems and the Data Breach were material to Plaintiff and the West Virginia Statewide Class. As Defendant intended, Plaintiff and West Virginia Statewide Class relied on Defendant's omissions and/or misrepresentations in this regard.

196.    Plaintiff and West Virginia State Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose.  Plaintiff and West Virginia Statewide Class members did not, and could not, have discovered the breach of Defendant's information security systems on their own.

197.    Defendant had an ongoing duty to the Plaintiff and West Virginia Statewide Class to refrain from unfair and deceptive practices under the West Virginia CCPA in the course of their business.  Specifically, Defendant owed Plaintiff and West Virginia Statewide Class members a duty to safeguard Plaintiff's and the West Virginia Statewide Class members' sensitive data, to implement state-of-the-art cyber security controls, and to disclose all the material facts concerning the security of their sensitive, consumer information because they possessed exclusive knowledge with regard to the security

of its systems; yet, Defendant intentionally concealed this information from Plaintiff and the West Virginia Statewide Class, and/or made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

198.    West Virginia Statewide Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's concealment, misrepresentations, and/or failure to disclose material information.

199.    Defendant's violations present a continuing risk to the West Virginia Statewide Class, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

200.    On September 14, 2017, a notice letter was sent to Equifax complying with W. Va. Code § 46A-6-106(c). In addition, Equifax is on notice as it was the Defendant itself that disclosed the Data Breach on September 7, 2017, approximately four months after it occurred. Between the time the data breach was detected in May 2017 and the filing of this Complaint, Equifax has failed to provide appropriate or, as set forth above, statutorily required safeguards to consumers including Plaintiff and West Virginia Statewide Class members. Moreover, Defendant was provided notice of the issues raised in this count and this Complaint by the numerous complaints filed against it since disclosure of the breach. Therefore, Plaintiff and West Virginia Statewide Class members seek all damages and relief to which the West Virginia Statewide Class is entitled.

201.    Pursuant to W. Va. Code § 46A-6-106(a), Plaintiff and the West Virginia Statewide Class seek an order enjoining Defendant's unfair and/or deceptive acts or practices, and awarding damages, punitive damages, and any other just and proper relief available under the West Virginia CCPA.

**Claims Asserted on Behalf of the New York Statewide Class**

### COUNT X —
### Violations of New York's Consumer Protection from Deceptive Acts and Practices Law, N.Y. Gen. Bus. Law § 349

202.    Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

203.    Plaintiffs Kevin O'Brien and Sarah O'Brien bring this action on behalf of themselves and the New York Statewide Class against Defendant.

204.    New York's Consumer Protection from Deceptive Acts and Practices Law provides:

"Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." N.Y. Gen. Bus. Law § 349(a).

205.    Equifax conducts "business, trade or commerce" or "furnish[es]…service" in the State of New York within the meaning of N.Y. Gen. Bus. Law § 349(a).

206.    In the course of its business, Defendant Equifax, through its agents, employees, and/or subsidiaries, violated New York's Consumer Protection from Deceptive Acts and Practices Law as detailed above.

207.    Specifically, Defendant misrepresented itself as a safe, trustworthy caretaker of Plaintiffs' and New York Statewide Class members' personal and confidential data, failed to undertake or maintain appropriate security measures to safeguard consumers' data, failed to adequately respond to the Data Breach, and failed to timely and accurately alert Plaintiffs and New York Statewide Class members of the Data Breach, their rights, and mitigation options.

208.    In doing so, Defendant engaged in one or more of the following deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349(a):

- Using or employing deception, fraud, false promise or misrepresentation or the concealment, suppression or omission of a material fact with the intent that consumers rely upon such concealment, suppression or omission, in connection with the sale of Equifax's goods or services to consumers;

- Representing that Equifax's information security systems and practices have characteristics or benefits that they do not have;

- Causing likelihood of confusion or of misunderstanding as to security of New York Statewide Class members sensitive information; and/or

- Engaging in other misleading conduct which created a likelihood of confusion or of misunderstanding.

209.    Such actions by Defendant are being directed to consumers in the State of New York and thereby constitute unlawful, unfair, deceptive, and fraudulent business practices in violation of N.Y. Gen. Bus. Law § 349.

210.    Defendant's concealment of the true characteristics of its information security systems

and the Data Breach were material to Plaintiffs and the New York Statewide Class. As Defendant

intended, Plaintiffs and New York Statewide Class relied on Defendant's omissions in this regard.

211.    Plaintiffs and New York Statewide Class members had no way of discerning that

Defendant's representations were false and misleading, or otherwise learning the facts that Defendant

had concealed or failed to disclose, because Defendant did not disclose the true nature and

characteristics of its information security systems and practices.

212.    Defendant had an ongoing duty to Plaintiffs and the New York Statewide Class to refrain

from misleading and deceptive practices in the course of its business under New York's Consumer

Protection from Deceptive Acts and Practices Law.  Specifically, Defendant owed Plaintiffs and New

York Statewide Class members a duty to safeguard Plaintiffs' and the New York Statewide Class

members' sensitive data, to implement state-of-the-art cyber security controls, and to disclose all the

material facts concerning its information security systems and practices because Defendant possessed

exclusive knowledge with regard to the security of its systems; yet, intentionally concealed this

knowledge from Plaintiffs and the New York Statewide Class, and/or made misrepresentations that were

rendered misleading because they were contradicted by withheld facts.

213.    In addition, Equifax violated the N.Y. Gen. Bus. Law § 899-a(2) by failing to notify

Plaintiffs and New York Statewide Class members of the Data Breach in "the most expedient time

possible and without unreasonable delay."  Furthermore, Equifax failed to provide Plaintiffs and New

York Statewide Class members with even the required minimum information for determining the scope

of the Data Breach.

214.    Plaintiffs and New York Statewide Class members suffered ascertainable loss and actual

damages as a direct and proximate result of Defendant's concealment, misrepresentations, and/or failure

to disclose material information.

215.    Defendant's violations present a continuing risk to Plaintiffs and the New York Statewide

Class, as well as to the general public.  Defendant's unlawful acts and practices complained of herein

affect the public interest.

216.    Defendant's unlawful actions have caused and are continuing to cause injury and

damages to Plaintiffs and New York Statewide Class members.

217.    Pursuant to N.Y. Gen. Bus. Law § 349(h), Plaintiffs and the New York Statewide Class seek an order enjoining Defendant's unlawful and deceptive acts as set forth above and awarding Plaintiffs and each class member his actual damages or fifty dollars, whichever is greater, and treble and/or punitive damages.

218.    Plaintiffs and the New York Statewide Class also seek reasonable attorneys' fees and costs under applicable law including Federal Rule of Civil Procedure 23 and N.Y. Gen. Bus. Law § 349(h).

**Claims Asserted on Behalf of the Rhode Island Statewide Class**

**COUNT XI —**
**Violations of Rhode Island Deceptive Trade Practice Act, R.I. Gen. Laws Ann. § 6-13.1-1, *et seq.***

219.    Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

220.    Plaintiffs Lorraine Plante and Stephen Plante bring this action on behalf of themselves and the Rhode Island Statewide Class against Defendant.

221.    Rhode Island's Deceptive Trade Practice Act provides: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are declared unlawful." R.I. Gen. Laws Ann. § 6-13.1-2.

222.    Equifax engages in "trade" and "commerce" in the State of Rhode Island within the meaning of R.I. Gen. Laws Ann. § 6-13.1-1(5), for personal, family, and/or household purposes.

223.    Equifax, Plaintiffs, and Rhode Island Statewide Class members are "persons" as defined in R.I. Gen. Laws Ann. § 6-13.1-1(3).

224.    Equifax, through its agents, employees, and/or subsidiaries, violated Rhode Island's Deceptive Trade Practice Act as detailed herein.

225.    Specifically, Defendant misrepresented itself as a safe, trustworthy caretaker of Plaintiffs' and Rhode Island Statewide Class members' personal and confidential data, failed to undertake or maintain appropriate security measures to safeguard consumers' data, failed to adequately respond to the Data Breach, and failed to timely and accurately alert Plaintiffs and Rhode Island Statewide Class members of the Data Breach, their rights, and mitigation options.

226.    Equifax engaged in one or more of the following unlawful, unfair, and deceptive acts and

practices, misrepresentation, and the concealment suppression, and omission of material facts with respect to the sale and advertisement of the services purchased by the Rhode Island Class in violation of R.I. Gen. Laws Ann. § 6-13.1-2, including but not limited to:

- Equifax misrepresented material facts pertaining to the provision of medical services to the Rhode Island Statewide Class by representing that they would maintain adequate data security practices and procedures to safeguard Plaintiffs' Rhode Island Statewide Class members' PII from unauthorized disclosure, release, data breaches, and theft in violation of R.I. Gen. Laws Ann. § 6-13.1-1(6) (v), (vii), (ix), (xii), (xiii), and (xiv);

- Equifax misrepresented material facts pertaining to their provision of consumer credit reporting services to the Plaintiffs and Rhode Island Statewide Class members by representing that they did and would comply with the requirements of relevant federal and state laws pertaining to the data security of Rhode Island Statewide Class members' PII in violation of R.I. Gen. Laws Ann. § 6-13.1-1(6) (v), (vii), (ix), (xii), (xiii), and (xiv);

- Equifax omitted, suppressed, and concealed the material fact of the inadequacy of the data security protections for Plaintiffs' and Rhode Island Statewide Class members' PII in violation of R.I. Gen. Laws Ann. § 6-13.1-1(6) (v), (vii), (ix), (xii), (xiii), and (xiv);

- Equifax engaged in unfair, unlawful, and deceptive acts and practices with respect to the storage and provision of personal, sensitive data by failing to maintain the privacy and security of Plaintiffs' and Rhode Island Statewide Class members' PII, in violation of duties imposed by the public policies reflected in applicable federal and state laws, resulting in the Data Breach. These unfair, unlawful, and deceptive acts and practices violated duties imposed by laws including the Federal Trade Commission Acts (15 U.S.C. §45) and the Rhode Island data breach statute (R.I. Gen. Laws §11-49.3-2);

- Equifax engaged in unlawful, unfair, and deceptive acts and practices with respect to the provision of consumer credit reporting services, including the storage, maintenance, processing, and use of sensitive, personal information, by failing to disclose the Data Breach to Plaintiffs and Rhode Island Statewide Class members in a timely and accurate manner, in violation of R.I. Gen Laws Ann. § 11-49.3-4(a)(2); and

- Equifax engaged in the unlawful, unfair, and deceptive acts and practices with respect to the provision of consumer credit reporting services, including the storage, maintenance, processing, and use of sensitive, personal information, by failing to take proper action following the Data Breach to enact adequate privacy and security measures and protect Plaintiffs and Rhode Island Statewide Class members' PII from further unauthorized disclosure, release, data breaches, and theft.

227.   Such actions by Defendant are being directed to consumers in the State of Rhode Island and thereby constitute unlawful, unfair, deceptive, and fraudulent business practices in violation of R.I. Gen. Laws Ann. § 6-13.1-2.

228.   As a direct and proximate cause of these practices, Plaintiffs and Rhode Island Statewide Class members suffered and ascertainable loss.

229.   The above unlawful, unfair, and deceptive acts and practices by Equifax were immoral, unethical, oppressive, and unscrupulous.  These acts caused substantial injury to consumers that the consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumer or to competition.  These acts were within common law, statutory, or other established concepts of fairness.

230.   Equifax knew or should have known that its information security systems and data security practices were inadequate to safeguard Plaintiffs' and Rhode Island Statewide Class members' PII, and that risk of a data breach or theft was highly likely.  Equifax's actions in engaging in the above-named deceptive acts and practices were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiffs and members of the Rhode Island Statewide Class.

231.   Defendant's concealment of the true characteristics of its information security systems and the Data Breach were material to Plaintiffs and the Rhode Island Statewide Class. As Defendant intended, Plaintiffs and Rhode Island Statewide Class members relied on Defendant's omissions in this regard.

232.   Plaintiffs and Rhode Island Statewide Class members had no way of discerning that Defendant's representations and/or omissions were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose, because Defendant did not disclose the true nature and characteristics of its information security systems and practices.

233.   Defendant had an ongoing duty to Plaintiffs and the Rhode Island Statewide Class to refrain from misleading and deceptive practices in the course of its business under Rhode Island's Deceptive Trade Practice Act.  Specifically, Defendant owed Plaintiffs and Rhode Island Statewide Class members a duty to safeguard Plaintiffs' and the Rhode Island Statewide Class members' sensitive data, to implement state-of-the-art cyber security controls, and to disclose all the material facts concerning its information security systems and practices because Defendant possessed exclusive knowledge with regard to the security of its systems; yet, intentionally concealed this knowledge from Plaintiffs and the Rhode Island Statewide Class, and/or made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

234.   In addition, Equifax violated the R.I. Gen Laws Ann. § 11-49.3-4(a)(2) by failing to notify Plaintiffs and Rhode Island Statewide Class members of the Data Breach in "no later than forty-five (45) calendar days after confirmation of the breach..."  Furthermore, Equifax failed to provide Plaintiffs and Rhode Island Statewide Class members with even the required minimum information for determining the scope of the Data Breach.

235.   As a direct and proximate result of Equifax's unlawful, unfair, and deceptive acts and practices, the Plaintiffs and Rhode Island Statewide Class members suffered ascertainable loss and actual damages and are therefore entitled to relief, including restitution, declaratory relief, and an injunction enjoining Defendant from their unlawful and unfair practices.

236.   Defendant's violations present a continuing risk to Plaintiffs and the Rhode Island Statewide Class, as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

237.   Plaintiffs and Rhode Island Statewide Class members seek declaratory and injunctive relief as permitted by law or equity to assure that the Plaintiffs and the Rhode Island Statewide Class have an effective remedy, including enjoining Equifax from continuing the unlawful practices as set forth above, along with any other relief the Court deems just and proper under R.I. Gen Laws Ann. § 6-13.1-5.2, including, but not limited to, actual damages or $200 per Rhode Island Statewide Class member, whichever is greater, injunctive and/or other equitable relief, punitive damages, and attorneys' fees and costs.

238.    Plaintiffs also seeks reasonable attorneys' fees and costs under applicable law including Federal Rule of Civil Procedure 23.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of members of the Nationwide Class and Statewide Classes, respectfully request:

239.    An order certifying the proposed Class or Classes under the provisions of Rule 23 of the Federal Rules of Civil Procedure, and directing that notice be provided to all members of the Classes;

240.    A finding that Equifax breached its duty to safeguard and protect the PII of Plaintiffs and Nationwide Class members that was compromised in the Data Breach;

241.    Injunctive relief, including public injunctive relief in the form of an order enjoining Defendant from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

242.    That Plaintiffs and Nationwide Class members recover damages in the form of restitution or disgorgement and/or compensatory damages for economic loss and out-of-pocket costs, treble damages under the applicable federal and state laws, and punitive and exemplary damages under applicable law;

243.    A determination that Equifax is financially responsible for all Class notice and administration of Class relief;

244.    A judgment against Defendant for any and all applicable statutory and civil penalties;

245.    An order requiring Defendant to pay both pre- and post-judgment interest on any amounts awarded;

246.    An award to Plaintiffs and Nationwide Class members of costs and reasonable attorneys' fees;

247.    Leave to amend this Complaint to conform to the evidence produced in discovery and at trial; and

248.    Such other or further relief as the Court may deem appropriate, just, and equitable.

## IX.    DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all

1  issues in this action so triable.

2       DATED this 15th day of September, 2017.

3                                      KELLER ROHRBACK L.L.P.

4

5                              By   /s/ Matthew J. Preusch

6                                   Matthew J. Preusch (298144)
                                    mpreusch@kellerrohrback.com
7                                   801 Garden Street, Suite 301
                                    Santa Barbara, CA 93101
8                                   (805) 456-1496, Fax (805) 456-1497

9                                   Lynn Lincoln Sarko, pro hac vice forthcoming
10                                  Derek W. Loeser, pro hac vice forthcoming
                                    Gretchen Freeman Cappio, pro hac vice forthcoming
11                                  Cari Campen Laufenberg, pro hac vice forthcoming
                                    KELLER ROHRBACK L.L.P.
12                                  1201 Third Avenue, Suite 3200
                                    Seattle, WA 98101
13                                  (206) 623-1900, Fax (206) 623-3384
                                    lsarko@kellerrohrback.com
14                                  dloeser@kellerrohrback.com
                                    gcappio@kellerrohrback.com
15                                  claufenberg@kellerrohrback.com

16
                                    MOTLEY RICE LLC
17

18                                  Jodi Flowers, pro hac vice forthcoming
                                    Breanne Cope (260217)
19                                  28 Bridgeside Boulevard
                                    Mount Pleasant, SC 29464
20                                  (843) 216-9000, Fax (843) 216-9450
                                    jflowers@motleyrice.com
21                                  bcope@motleyrice.com

22
                                    Laura Ray, pro hac vice forthcoming
23                                  Mathew Jasinski, pro hac vice forthcoming
                                    One Corporate Center
24                                  20 Church Street
                                    17th Floor
25                                  Hartford, CT 06103
                                    (860) 882-1681, Fax (860) 882-1682
26                                  lray@motleyrice.com
                                    mjasinski@motleyrice.com
27

28
                                    Attorneys for Plaintiffs